**Howard LUDLOW, Appellant,**

v.

**Scott H. DEBERRY, Individually, Scott DeBerry Interest, Inc., and Falcon Products, Inc., Appellees.**

**No. 14–93–01090–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 10, 1997.

Opinion Overruling Rehearing Jan. 29, 1998.

---

**268**

Jon P. Bohn, Cecilia H. Docloux, A. Glenn Diddell, III, Houston, appellant.

Michael Mazzone, J.W. Beverly, Houston, for appellees.

Before MURPHY, C.J., and ANDERSON and HUDSON, JJ.

## OPINION

ANDERSON, Justice.

Howard Ludlow appeals the denial of his motion to recuse the trial judge, certain discovery rulings, and a post-verdict order granting summary judgment in favor of appellees. Appellant raises seven points of error. We affirm in part and reverse and remand in part.

Ludlow filed suit against Scott DeBerry [1], Scott DeBerry Interests, Inc. ("SDI") (formerly known as Falcon), and Falcon Products, Inc. alleging breach of contract, quantum meruit, unjust enrichment, breach of the duty of good faith and fair dealing, breach of fiduciary duty, and fraudulent and negligent misrepresentation. Following the presentation of evidence, the jury found in favor of Ludlow on his claims of breach of contract and quantum meruit. The jury awarded Ludlow $124,051.00 in actual damages plus attorney's fees for the contract claim. On the quantum meruit claim, the jury found the

---

**1.** During the pendency of this appeal, Scott De-Berry died. His death, however, does not affect our disposition of this appeal. TEX.R.APP. P. 9.

reasonable value of Ludlow's services to be $25,000.00. The jury found in favor of De-Berry on the claims of breach of fiduciary duty and fraud.

According to one of the jurors, when they left the courtroom, the trial judge, Judge Eugene Chambers, angrily told the dismissed jurors they had delivered "the worst verdict that he had heard in eight and a half years...." Upset by the judge's outburst and criticism, the presiding juror called Ludlow's counsel and advised him about the incident. Ludlow's counsel contacted other jurors who confirmed the presiding juror's account of the incident. After obtaining several affidavits, Ludlow filed a motion to recuse Judge Chambers. On the same day, Deberry filed motions for new trial and for judgment n.o.v. Judge Chambers refused to recuse himself and the recusal was referred to a visiting judge, Judge Curt Steib.

During the recusal hearing, Judge Steib refused to allow Ludlow to call Judge Chambers to the stand. Judge Steib later admitted talking with Judge Chambers before the recusal hearing. Judge Steib denied the recusal motion on May 13, 1993.

Ludlow filed a motion for leave to file a petition for writ of mandamus in this court, which this court initially granted, but later withdrew leave to file and overruled the motion, stating that Ludlow had an adequate remedy by appeal. The trial court granted Deberry's motion for new trial and set aside a prior order denying Deberry's motion for partial summary judgment. On June 11, 1993, Deberry dropped his counterclaim and moved for summary judgment. Judge Chambers granted final summary judgment for DeBerry and assessed court costs against Ludlow. Ludlow moved to re-open the recusal hearing and moved the court to reconsider its prior rulings. The trial court denied these motions.

## I. Recusal Issues

■ In point of error three, appellant contends Judge Steib committed reversible error in refusing to allow appellant to call Judge Chambers as a witness at the recusal hearing. In point of error four, appellant claims the trial court erred in refusing to re-open the recusal hearing after Judge Stovall, the chief administrative judge, produced a letter from Judge Steib stating he had talked with Judge Chambers prior to the recusal hearing about the necessity for Judge Chambers' testimony.

On August 17, 1995, this panel issued an order sustaining point of error three and holding it was error to refuse to allow the testimony of Judge Chambers. Accordingly, we abated the appeal and ordered the trial court to hold another hearing on appellant's motion to recuse during which appellant could question Judge Chambers. The hearing ordered by this court was never held. On November 28, 1995, appellant filed a motion for en banc reconsideration of our August 17, 1995 order. In that motion, appellant argued that, because Judge Chambers is no longer on the bench, the issue of whether the district court should recuse Judge Chambers was now moot. Therefore, appellant asked that we vacate our August 17, 1995 order. We granted the motion and withdrew our August 17, 1995 order by order dated December 7, 1995.

Appellant claimed in his motion for reconsideration that his "third point of error is moot to the extent it seeks as an alternative remedy a remand to the district court for a new recusal hearing...." Appellant's third point of error alleged reversible error in Judge Steib's refusal to allow appellant to call Judge Chambers as a witness at the recusal hearing. The statement of facts for the recusal hearing reflects that appellant requested the recusal judge to call Judge Chambers as a witness, and that request was denied. After a brief discussion of the holding in *Joachim v. Chambers*, 815 S.W.2d 234 (Tex.1991), appellant's counsel acquiesced in the court's ruling stating, "In light of the Court's ruling that you're not allowing me to put on Judge Chambers ... I'll have to put on myself."

■ Rule 103(a)(2) of the Texas Rules of Civil Evidence provides that error may not be predicated upon a ruling which excludes evidence unless a substantial right of the party is affected, *and* the substance of the objection was made known to the court by

offer of proof. The primary purpose of the offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful. GOODE, WELLBORN & SHARLOT, GUIDE TO THE TEXAS RULES OF EVIDENCE, § 103.3 at 21 (2nd ed.1993). A secondary purpose is to permit the trial judge to reconsider his ruling in light of the actual evidence. *Id.* An offer of proof is sufficient if it apprised the court of the substance of the testimony and may be presented in the form of a concise statement. *Chance v. Chance,* 911 S.W.2d 40, 51–52 (Tex.App.—Beaumont 1995, writ denied). We have examined the record of the recusal hearing and have not found an offer of proof. When the trial court excludes evidence, failure to make an offer of proof waives any complaint about the exclusion on appeal. *Porter v. Nemir,* 900 S.W.2d 376, 383 (Tex.App.—Austin 1995, no writ). *See also Hibbler v. Walker,* 593 S.W.2d 398, 400 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ) (holding there can be no refusal to admit evidence that has not been offered). Accordingly, we overrule point of error three.

■ In points of error one and two, Ludlow claims Judge Steib committed reversible error by refusing to recuse Judge Chambers under Rule 18b(2)(a)-(b). Rule 18b requires a judge to "recuse himself in any proceeding in which: (a) his impartiality might reasonably be questioned [or] (b) he has a personal bias or prejudice concerning the subject matter or a party, or personal knowledge of disputed evidentiary facts concerning the proceeding...." TEX.R. CIV. P. 18b(2)(a)-(b).

DeBerry argues that both bases for recusal require a showing of extrajudicial bias. Ludlow contends that a showing of extrajudicial bias is not required to show impartiality under Rule 18b(2)(a). In support of his argument, Ludlow cites Canon 3 of the Code of Judicial Conduct, entitled "Performing the Duties of Judicial Office Impartially and Diligently." This Canon sets forth the standards that apply to a judge in performing his adjudicative or administrative responsibilities. For example, Canon 3, pt. B(4) requires a judge to be "patient, dignified and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in

an official capacity...." TEXAS SUPREME COURT, CODE OF JUDICIAL CONDUCT, Canon 3, pt. B(4) (1994) [hereinafter TEX.CODE OF JUDICIAL CONDUCT, Canon 3 (1994)]. A judge must also perform his duties without bias or prejudice. TEX.CODE OF JUDICIAL CONDUCT, Canon 3, pt. B(5) (1994). Ludlow contends that violation of any of the standards set out in Canon 3 is impartiality per se.

■ Canon 8 describes the intent of the Code:

The code is designed to provide guidance to judges and candidates for judicial office and to provide a structure for regulating conduct through the State Commission on Judicial Conduct. It is not designed or intended as a basis for civil liability or criminal prosecution. Furthermore, the purpose of the Code would be subverted if the Code were invoked by lawyers for mere tactical advantage in a proceeding.

It is not intended, however, that every transgression will result in disciplinary action. Whether disciplinary action is appropriate, and the degree of discipline to be imposed, should be determined through a reasonable and reasoned application of the test and should depend on such factors as the seriousness of the transgression, whether there is a pattern of improper activity and the effect of the improper activity on others or on the judicial system.

TEX.CODE OF JUDICIAL CONDUCT, Canon 8, pt. A (1994). Thus, a judge may be disciplined for violating one of these rules, but a violation does not necessarily mean that the judge should be recused.

In *Grider v. Boston Co., Inc.,* 773 S.W.2d 338, 346 (Tex.App.—Dallas 1989, writ denied), appellants claimed error in the trial judge's refusal to recuse himself because the judge "exhibited an antagonistic attitude toward them and ... his rulings were consistently unfair." The Dallas court held that a party attempting to require a judge to recuse himself must show that the judge's bias was extrajudicial and not based on in-court rulings. *Id.* The court added that appellants'

remedy was to assign error concerning the adverse rulings. *Id.*

In *Liteky v. U.S.*, 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), the United States Supreme Court discussed the "extrajudicial source" doctrine. Although the Court was construing the federal disqualification rule, it contains essentially the same language as Rule 18b.[2] The Court first noted that the terms "bias" and "prejudice" "connote a favorable or unfavorable disposition or opinion that is somehow *wrongful or inappropriate....*" *Id.* at 550, 114 S.Ct. at 1155 (emphasis in original). The following passage from this opinion explains the kind of bias or prejudice requiring recusal:

> The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task. As Judge Frank pithily put it: "Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions."

*Id.* Regarding whether judicial rulings can establish bias, the Supreme Court observed that judicial rulings alone almost never constitute a valid basis for a recusal motion because they cannot possibly show reliance upon an extrajudicial source and can rarely evidence the degree of favoritism or antagonism required when no extrajudicial source is involved. *Id.* at 554–56, 114 S.Ct. at 1157. The Court further stated that opinions formed by the judge on the basis of facts introduced or events occurring during proceedings do not constitute a basis for a recusal motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. *Id.* Thus, the Supreme Court reasoned that judicial remarks during the course of a trial that are critical or disapproving or even hostile to counsel, parties, or their cases, ordinarily do not support recusal. *Id.* Such remarks *may* do so if they reveal an opinion deriving from an extrajudicial source and such remarks *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. *Id.*

Applying *Liteky*[3] and *Grider* to the facts of this case, we find Ludlow did not establish that Judge Chambers' alleged bias arose from an extrajudicial source. Although we do not condone Judge Chambers'outbursts, all of the actions complained about by Ludlow arose during the pendency of the trial court proceedings. None of the actions by Judge Chambers indicate such a "high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky,* 510 U.S. at 555, 114 S.Ct. at 1157. Thus, we find no error by Judge Steib in refusing to recuse Judge Chambers and we overrule points of error one and two.

■ In point of error four, Ludlow claims the trial court erred in refusing to re-open the recusal hearing. Ludlow asserts the recusal hearing was "tainted by an appearance of impartiality" because Judge Steib communicated with Judge Chambers before the recusal hearing regarding whether Judge Chambers would testify. The substance of that communication was described by Judge Steib in a letter to Judge Stovall, the presiding judge of the Second Administrative Judicial Region. In pertinent part, this letter states:

> On the afternoon of April 28, 1993, I walked to the Congress Plaza before returning to the Allen Park Inn. I considered

---

2. The federal rule requires a federal judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C.A. 455(a) (West 1993). This rule also requires disqualification if the judge has "a personal bias or prejudice concerning a party...." *Id.* at 455(b)(1).

3. Although the Court in *Liteky* is construing a federal rule, we may consider the Court's interpretation since it is essentially the same as the Texas rule on recusal and disqualification. *Eckerdt v. Frostex Foods, Inc.,* 802 S.W.2d 70, 72 (Tex.App.—Austin 1990, no writ).

Judge Chambers an interested party to the recusal motion. However, he did not and does not have counsel to represent him. Judge Chambers was on the bench trying a jury case. I waited until a break was taken, at which time I talked to him in his office for less than three minutes. I told him that I understood that I was being assigned the recusal motion. I wanted him to know that I could not hear the motion on the morning of April 30th, and I had reset it for 2:00 p.m. of that day. In my opening remarks to Judge Chambers, I told him I did not want to discuss the allegations or anything about the motions. None were discussed. Judge Chambers inquired if he would be required to be present, and my response was that as far as I was concerned he did not have to be there, because under my reading of the reasoning in *Joachim v. Chambers*, 815 S.W.2d 234 (Tex.1991), it was my practice not to permit any party to place a judge on the stand, unless it was first established that his testimony could not be procured from any other source. I think I said that if he was not present, and his testimony was required, I would have someone call him on 15 to 30 minutes notice. After that conversation on the afternoon of the 28th, I had no further discussion with Judge Chambers to this very moment.

Ludlow contends this communication is ex parte and constitutes a showing of per se partiality. Alternatively, Ludlow claims this was obstruction of justice under the TEXAS CODE OF JUDICIAL CONDUCT, Canon 3, pt. A(4).

Nothing in Judge Steib's letter indicates that his communication with Judge Chambers concerned the merits of the recusal motion. Absent any showing that the discussion concerned the merits of the proceeding, we hold this communication did not taint the proceedings. We overrule point of error four.

## II. Summary Judgment

In point of error five, Ludlow claims the trial court erred in granting summary judgment in favor of DeBerry and SDI on all claims. A movant for summary judgment must show there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). In reviewing a summary judgment to determine if a disputed fact issue exists precluding summary judgment, we must take as true all proof favorable to the non-movant, indulging every reasonable inference and resolving all doubts in the non-movant's favor. *Id.* at 548–49. Bearing this standard in mind, we turn first to Ludlow's contract claims.

### A. Contract Claims

■ Ludlow alleged breach of contract claims against DeBerry individually and against SDI. DeBerry contends the trial court's grant of summary judgment was proper as to Ludlow's breach of contract claim against DeBerry individually because there was no meeting of the minds on the essential terms of the agreement alleged by Ludlow. For an agreement to be enforceable, there must be a meeting of the minds with respect to the subject matter of the agreement and as to all of its essential terms. *Calvin v. Koltermann, Inc. v. Underream Piling Co.*, 563 S.W.2d 950, 956 (Tex.Civ. App.—San Antonio 1977, writ ref'd n.r.e.). Where essential terms are missing, courts often find no more than an agreement to agree. *See Pine v. Gibraltar Sav. Ass'n*, 519 S.W.2d 238, 244 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). Only the parties' objective manifestations of intent may be considered. *Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 717 (Tex.App.—Houston [1st Dist.] 1988, writ denied).

■ The summary judgment proof shows that Ludlow and DeBerry agreed that Ludlow would become a "partner" in SDI and would get 25% of the profits. Although Ludlow alleges DeBerry promised to continue paying commissions to Ludlow in addition to the partnership profit share, Ludlow admits in the record that he and DeBerry never specifically discussed this. Furthermore, Ludlow concedes he never asked about continuation of his 60% commissions in addition to the 25% of profits because, in Ludlow's opinion, "there was no reason to."

In further support of his claim there is proof precluding summary judgment, Ludlow cites DeBerry's affirmative answer to an interrogatory asking whether DeBerry ever entered into an agreement with Ludlow to pay Ludlow compensation in addition to the commissions earned as a broker. Ludlow does not mention that the very next interrogatory asks for a description of the terms of the agreement(s) referenced in the prior question. In response to this next interrogatory, DeBerry stated that Ludlow's additional compensation was to be calculated as follows:

A. Payment due S. DeBerry per Doane Statements, plus

B. Commissions paid Ludlow, plus

C. Accrual due Ludlow, equals

D. Total profits of Falcon Products, D × .25 *Minus*

E. Payments already made to Ludlow, equals Payment owed Ludlow (if any).

This answer is consistent with DeBerry's testimony that Ludlow was to be paid the commissions as a draw against his partnership share. Thus, DeBerry's answer to the previous interrogatory does not support a finding that fact issues exist regarding the meeting of the minds on the terms of the agreement.

Finally, Ludlow points to the testimony of Ronald H. Spath:

Q. Do you have a good memory of what Mr. DeBerry told you about Ludlow's compensation?

A. No. I mean, he received 60 percent plus a certain— some other percentage, and I don't know what that— I don't recall even what that percentage was, offhand.

This testimony does not clearly show what compensation DeBerry and Ludlow agreed upon; however, it is some proof Ludlow was to continue receiving the 60% commissions he had received as a salesman. Although the proof reveals objective manifestations of intent by DeBerry to enter into a partnership agreement with Ludlow and to pay him 25% of the profits,we believe the proof also raises a fact issue concerning whether there was a meeting of the minds on the essential terms of the agreement. Based on the summary judgment proof, we hold the trial court erred in granting summary judgment on the ground there was no meeting of the minds on an alleged agreement to receive compensation beyond the 25% profit share.

Other contractual defenses raised by Deberry were lack of consideration and no bargained for exchange. SDI also argued lack of consideration on the breach of contract claim. An agreement must be supported by consideration. *Fourticq v. Fireman's Fund Ins. Co.*, 679 S.W.2d 562, 564 (Tex.App.—Dallas 1984, no writ). It is unnecessary that any benefit accrue to the promisor; it is sufficient if the promisee is subjected to loss or inconvenience. *See Roark v. Stallworth Oil & Gas Inc.*, 813 S.W.2d 492, 496 (Tex.1991).

At the time DeBerry and Ludlow allegedly agreed to become partners, DeBerry was the sole stockholder of SDI. Ludlow was already an employee of SDI. DeBerry testified that SDI did not bargain for any additional performance by Ludlow and that Ludlow did not perform any additional services. Ludlow argues that DeBerry was acting in his individual capacity and that there is no summary judgment proof that DeBerry was ever acting on behalf of SDI or Falcon in his dealings with Ludlow. Ludlow insists there was consideration for payment of additional compensation beyond the 25% profit share because Ludlow agreed to undertake extra duties and responsibilities. Ludlow testified that DeBerry asked Ludlow to "pick up the slack" while DeBerry took time off from work to be with his family. We find this testimony sufficient to raise a fact issue regarding the existence of consideration. Thus, to the extent the summary judgment in favor of DeBerry and SDI was based on lack of consideration, the trial court erred.

## B. Statute of Frauds

In the motion for summary judgment, DeBerry claimed the alleged agreement was barred by the Statute of Frauds. DeBerry claimed the only conceivable basis for holding DeBerry personally liable was by alleging a promise by DeBerry to pay Lud-

low for money allegedly owed Ludlow by SDI. Because a promise to pay the debt of another must be in writing and signed by DeBerry to be enforceable, TEX. BUS. & COM. CODE ANN. 26.01(b)(2), DeBerry argued that even if he had made an oral promise to pay Ludlow for money owed to him by SDI, it would be barred by the Statute of Frauds.

Ludlow responds that DeBerry remains personally liable under the main purpose doctrine. The main purpose doctrine is an exception preventing application of the Statute of Frauds where a promisor accepts primary responsibility for the debt of another and his main objective or "main purpose" is to serve some interest of his own. *See Haas Drilling Co. v. First Nat'l Bank,* 456 S.W.2d 886, 891 (Tex.1970). To take the oral promise out of the Statute, the promisor must be bargaining for a consideration that is beneficial to him and constitutes his primary object. *Id.*

There are three inquiries the courts use to determine whether an oral promise to pay the debt of another is outside the Statute of Frauds and enforceable. *Id.* These are (1) whether the promisor intends to accept primary responsibility to pay the debt or merely intends to be a surety; (2) whether there was consideration for the promise; and (3) whether the consideration given for the promise is the sort of consideration which the courts hold is necessary to take the promise out of the Statute. *Id.*

In applying the main purpose doctrine, the court must also look to the consideration received and determine: "(a) whether the promisor obtained, as part of that consideration, a benefit accruing directly to him personally; and (b) if so, whether the obtaining of that benefit was his main purpose for making the promise." *Id.* (quoting *Cooper Petroleum Co. v. La Gloria Oil & Gas Co.,* 436 S.W.2d 889, 896 (Tex.1969)). The mere fact that a benefit will accrue to the promisor as a stockholder, officer, or director does not deny the promise its place within the Statute of Frauds. *Dyer v. A-I Automotive, Inc.,* 743 S.W.2d 685, 687 (Tex. App.—El Paso 1987, no writ). "[W]here the stockholders and directors are the moving force in the corporation, and their main purpose was to subserve their own purpose and promote their financial interest or gain, an oral promise made by one of this class can be categorized as original and not within the statute." *Id.*

The record shows that DeBerry offered to treat Ludlow as a 25% partner. Ludlow testified he understood DeBerry would pay Ludlow a 25% share as a partner in addition to Ludlow's compensation of 60% of gross brokerage commissions. Ludlow further testified DeBerry offered the partnership profits, in addition to Ludlow's 60% commissions, because DeBerry stated he wanted to take time off from work and spend more time with his family. Thus, Ludlow argues DeBerry would have personally benefitted from the agreement. DeBerry, however, testified there was no bargain for additional performance by Ludlow. Given the conflicting testimony, we find a fact issue exists regarding consideration and intent. Therefore, the issue whether the promise was within the Statute of Frauds, or was outside the statute based on the main purpose doctrine, was a disputed fact issue precluding summary judgment.

### C. Quantum Meruit; Unjust Enrichment

In addition to challenging the summary judgment on the contract claims, Ludlow claims the trial court erred in granting summary judgment in favor of DeBerry and SDI on the claims of quantum meruit and unjust enrichment. Ludlow was paid more than $450,000.00 for his services (his commissions as a draw against the 25% partnership share), but he claimed he was owed approximately $159,000.00 more for the extra efforts he expended after he and DeBerry discussed a partnership. SDI and DeBerry responded that Ludlow was not entitled to additional monies when SDI and DeBerry received nothing more of value than that already required under Ludlow's employment agreement.

Generally, a plaintiff may recover in quantum meruit only when there is no express contract covering those services or materials. *Truly v. Austin,* 744 S.W.2d 934, 936 (Tex.

1988). In the absence of an express contract covering the subject matter of the claim, a plaintiff may nevertheless recover in quantum meruit when the plaintiff has partially performed but, because of the defendant's breach, the plaintiff is prevented from completing the contract. *Id.*

Ludlow testified DeBerry asked that, in exchange for a partnership share, Ludlow "take up the slack" while DeBerry took time off from work to be with his family. Although Ludlow admitted he did not perform any duties additional to those performed before the alleged partnership agreement,[4] there is proof sufficient to raise a fact issue whether Ludlow was entitled to recover in quantum meruit for the increased responsibilities he assumed when DeBerry took time off.

Ludlow also alleged unjust enrichment against DeBerry and SDI, claiming he deserved extra compensation for the extra duties and responsibilities he undertook. Again, the summary judgment proof reveals Ludlow did not perform any extra duties beyond those required under the employment agreement; however, there is proof sufficient to raise a fact issue whether DeBerry and SDI were unjustly enriched by any extra responsibilities Ludlow may have assumed. Thus, we find the trial court erred in granting summary judgment in favor of DeBerry and SDI on this claim.

### D. Fraud Claims

Ludlow alleged claims of fraudulent and negligent misrepresentation, and breaches of fiduciary duty and of the duty of good faith and fair dealing. DeBerry argued in his motion for summary judgment two reasons for granting summary judgment on Ludlow's fraudulent inducement claim: (1) there is no proof that any promise by DeBerry was false at the time it was made; and (2) Ludlow's alleged damages are economic and, therefore, Ludlow's claim sounds in contract rather than tort. As to the negligent misrepresentation claim, DeBerry argued Ludlow's alleged damages were economic, and therefore this tort claim also sounds in contract.

Texas courts have long struggled with the relationship between contract claims and tort claims. The El Paso Court of Appeals aptly described the law of "contorts" as a "muddy area, devoid of bright line rules or easy answers." *Airborne Freight Corp. v. C.R. Lee Enter., Inc.*, 847 S.W.2d 289, 293 (Tex. App.—El Paso 1992, writ denied). In *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617 (Tex.1986), the Texas Supreme Court observed that, the nature of the injury determines which duty or duties are breached, and where the injury resulting from a breach of contract is only the economic loss to the subject of the contract itself, the action sounds in contract alone. *Id.* at 618. The jury had found Jim Walter Homes liable for breach of the warranty of good workmanship in the contract and for gross negligence in the supervision of construction of the house. *Id.* at 617. Because the court found that the injury was in substance a breach of contract, and breach of contract cannot support recovery of exemplary damages, the court reversed the award of exemplary damages. *Id.* at 618.

Three years later, the supreme court restated the rule that when the only loss or damage is to the subject matter of the contract the plaintiff's action is ordinarily on the contract. *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex.1991). In *DeLanney*, the plaintiff alleged negligence and DTPA violations in Southwestern Bell's failure to publish a Yellow Pages advertisement. *Id.* at 493. The jury found Bell liable for negligence and assessed actual damages for past and future lost profits. *Id.* at 494. The court of appeals affirmed the award, but the supreme court reversed, holding the damages flowed only from Bell's failure to

---

4. The following excerpt is illustrative of Ludlow's testimony regarding additional performance beyond that required by his employment agreement:

 Q. Mr. Ludlow, we were talking about what you claimed to do for the $159,000 you're suing for. Is there—can you pinpoint any-

thing particular that you did that you hadn't done before when the agreement was made?
 A. Specific action?
 Q. Yes.
 A. No, I can't pinpoint a specific action other than to tell you that I would have done it with more energy or fervor.

publish the advertisement, and that such failure is not a tort. *Id.* at 495. Following its analysis in *Jim Walter Homes*, the court held Delaney's claim was solely in contract, and because Delaney did not request jury questions on breach of contract, the recovery awarded under the negligence claim was reversed with judgment that Delaney take nothing. *Id.* The *DeLanney* court also addressed the DTPA claims, but that analysis is not relevant to the contract/tort issue presented in the case *sub judice* and we need not include it here.

■ Turning to Ludlow's claim of negligent misrepresentation, we must determine whether the damages sought are purely contractual damages. *See DeLanney,* 809 S.W.2d at 495. The summary judgment record shows that Ludlow sought "benefit of the bargain" damages in that he sought the additional income he would have received if DeBerry had complied with the alleged oral contract. Applying *DeLanney* to these facts, we must hold that Ludlow's negligence claim must fail. Because Ludlow sought only economic damages under his claim of negligent misrepresentation, the trial court properly granted summary judgment on this cause of action.

■ The determination whether the trial court properly granted summary judgment on the fraud claim is more problematic. Both *Jim Walter Homes* and *DeLanney* involved claims of negligence in the performance of the contract rather than a tort accompanying the formation of the contract. The supreme court has not explicitly extended *Jim Walter Homes* and *DeLanney* to fraud claims. Although benefit of the bargain damages are not recoverable under a negligence cause of action, they are recoverable under a fraud theory. *Leyendecker & Assoc., Inc. v. Wechter,* 683 S.W.2d 369, 373 (Tex.1984). Contract type damages are recoverable for fraud because fraud is a quasi-contractual cause of action. *See Williams v.*

*Khalaf,* 802 S.W.2d 651, 656 (Tex.1990);[5] *Matthews v. AmWest Sav. Ass'n,* 825 S.W.2d 552, 554 (Tex.App.—Beaumont 1992, writ denied). Fraud as a cause of action, however, is distinct from contract in that the plaintiff must prove the additional element of fraudulent intent, i.e., the intent to deceive. *Trenholm v. Ratcliff,* 646 S.W.2d 927, 930 (Tex. 1983). The Texas Supreme Court has reiterated the general rule that "failure to perform the terms of a contract is a breach of contract, not a tort." *Crim Truck & Tractor Co. v. Navistar Intern. Transp. Corp.,* 823 S.W.2d 591, 597 (Tex.1992). Nevertheless, when one party enters the contract with no intention of performing, the supreme court has held that this claim is still viable *Id.* Based on these cases, we believe a party may still seek to recover damages based on a claim of fraudulent inducement.

A number of courts of appeals, however, have extended the holdings in *DeLanney* and *Jim Walter Homes* to fraud claims without explaining the basis for the extension or determining whether the case involved a claim of fraudulent inducement to contract. *See, e.g.,Grace Petroleum Corp. v. Williamson,* 906 S.W.2d 66 (Tex.App.—Tyler 1995, no writ). One court acknowledged that *DeLanney* and *Jim Walter Homes* involved negligence claims, but nevertheless found "no intended distinction" between the negligence claim in those cases and fraud. *Airborne Freight Corp., Inc. v. C.R. Lee Enter., Inc.,* 847 S.W.2d 289, 296 (Tex.App.—El Paso 1992, writ denied). Other courts have held that *DeLanney* and *Jim Walter Homes* do not apply to claims of fraud in the inducement. *See Schindler v. Austwell Farmers Coop.,* 829 S.W.2d 283, 291 (Tex.App.—Corpus Christi), *modified on other grounds,* 841 S.W.2d 853 (Tex.1992); *American Nat'l Ins. Co. v. International Business Machines Corp.,* 933 S.W.2d 685, 687 (Tex.App.—San Antonio 1996, writ requested); *Matthews v.*

---

5. The supreme court offered the following analysis of the history of fraud:

 The modern fraud cause of action developed from an action on the case for deceit, and was related to debt as an evolution of the action of *assumpsit. Assumpsit* was a contractual or quasi-contractual action involving a promise and leading to a claim of *debt* (but not the pure common law action for a debt). Actually the fraud and deceit cause of action developed through the action of Assumpsit as a hybrid of the original common law action for debt and action for Account.

 *Williams,* 802 S.W.2d at 656 (citations omitted).

*AmWest Sav. Ass'n,* 825 S.W.2d 552 (Tex. App.—Beaumont 1992, writ denied).

The Corpus Christi Court of Appeals was the first to attempt to reconcile the holdings in *Jim Walter Homes* and *DeLanney* with case law allowing recovery of contractual damages under a fraud cause of action. In *Schindler v. Austwell Farmers Co-op.,* the plaintiff alleged fraudulent inducement and the jury found appellant liable. *Id.* at 286. The appellate court upheld liability, actual damages, attorney's fees, and exemplary damages. *Id.* at 287–89. On rehearing, appellant raised the rule announced in *Jim Walter Homes,* arguing that the exemplary damages should not stand. *Id.* at 289. The Corpus Christi court advanced two arguments for declining to extend *Jim Walter Homes* to a claim of fraudulent inducement to contract. *Id.* at 291. First, the court reasoned that contractual remedies are limited to compensatory damages regardless of the culpable mental state of the breaching party and, under this breacher-friendly rule, "the aggrieved party deserves the benefit of the bargain, but the aggrieving party does not deserve punishment." *Id.* The court found no policy reasons for extending the holding in *Jim Walter Homes* to benefit parties who fraudulently enter contracts they have no intention of performing. *Id.*

Second, the court reasoned that applying *Jim Walter Homes* to a claim for fraudulent inducement would completely eliminate fraudulent misrepresentation in procurement of a contract as a tort. *Id.* The court concluded that eliminating this tort contravenes the Texas Supreme Court's holdings in *Spoljaric* and *Crim Truck. See Id.*

Schindler appealed to the Supreme Court and argued that Austwell could not recover both attorney's fees for breach of contract and punitive damages for fraud based on the same event and the same injury. *Schindler v. Austwell Farmers Co-op.,* 841 S.W.2d 853, 854 (Tex.1992). He also complained there was no evidence to support a recovery for fraud. *Id.* The court agreed with the latter contention and therefore did not reach the former. *Id.* The court held: (1) there was no evidence that, at the time he made the promise, Schindler did not intend to pay for his purchases; (2) therefore, no evidence existed to support a recovery for fraud; and (3) absent liability for actual damages, there was no basis for an award of punitive damages. *Id.* The court modified the judgment to delete the award of punitive damages, and affirmed the judgment as so modified. *Id.* It is important to our analysis here that the supreme court in *Schindler* did not extend *DeLanney* and *Jim Walter Homes* to vitiate a fraudulent inducement claim, asserted in connection with a contract claim, on the basis that no separate fraud damages were extant.

Other courts have followed the holding in *Schindler. See American Nat'l Ins. Co. v. International Business Machines Corp.,* 933 S.W.2d 685, 687 (Tex.App.—San Antonio 1996, writ requested) (reversing summary judgment on fraudulent inducement claims and holding that the rule in *Jim Walter Homes* does not apply to the tort of fraudulent inducement to contract with no intention of performing the contract); *Swanson v. Schlumberger Technology Corp.,* 895 S.W.2d 719 (Tex.App.—Texarkana 1994, writ granted) (holding a party may recover exemplary damages for fraudulent inducement to contract); *Peco Constr. Co. v. Guajardo,* 919 S.W.2d 736 (Tex.App.—San Antonio 1996, writ denied) (holding that a party may seek to recover benefit of the bargain damages under a fraud cause of action)

This court is not immune from the confusion experienced by other courts of appeals in addressing these types of cases. Panels of this court have applied *Jim Walter Homes* and *DeLanney* to claims of fraudulent inducement without exploring the differences between claims of common law fraud and claims of fraudulent inducement. *See Barbouti v. Munden,* 866 S.W.2d 288, 293 (Tex. App.—Houston [14th Dist.] 1993, writ denied); *Hebisen v. Nassau Dev. Co.,* 754 S.W.2d 345, 348 (Tex.App.—Houston [14th Dist.] 1988, writ denied). In *Barbouti,* a panel of this court found a claim of fraudulent inducement to be substantively one for breach of contract such that the Statute of Frauds applied. 866 S.W.2d at 293. This court did not hold that a claim of fraudulent inducement fails if the only damages alleged

are benefit of the bargain damages.[6] *See id.* at 295–97. Instead, the court held there was no evidence supporting the jury's finding of fraud. *Id.* at 295. More specifically, the court stated that Munden failed to present evidence that, at the time the promise or representation was made, Dr. Barbouti did not *intend* to perform it. *Id.* at 296.

*Hebisen* is another case from this court involving a claim of fraudulent inducement. In *Hebisen*, the jury found: (1) appellants represented, at the time the lease was signed, they would make rental escalation payments; (2) appellee relied on these representations to his detriment; and (3) at the time appellants made these representations, appellants did not intend to pay the rental escalation payments. 754 S.W.2d at 347. On appeal to this court, appellants claimed there was no evidence to support the jury's findings of injury and damages. *Id.* at 348. We observed that the actual damages awarded were amounts due pursuant to the lease agreement and, therefore, were essentially contract damages. *Id.* We held that, "irrespective of appellants' intent at the time they signed the lease not to pay the rental escalation charges," the damages awarded were contract damages and not damages proximately caused by fraud.[7] *Id.* Therefore, we held there was no evidence to support the award of actual damages for fraud.[8] *Id.* By holding there was no proof of actual damages for fraud if the damages sounded in contract, *Hebisen* can be construed to hold that a plaintiff cannot raise a fraudulent inducement claim if his only alleged damages are benefit of the bargain or contract type damages. To the extent *Hebisen* may be interpreted to preclude recovery of benefit of the bargain damages on a claim of fraudulent inducement cause of action, *Hebisen* impliedly conflicts with the Texas Supreme Court approval of the recovery of such damages in *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435–36 (Tex.1986).[9]

In the instant case, Ludlow claimed DeBerry made fraudulent misrepresentations which induced him to enter a partnership agreement with DeBerry. In appellees' motion for summary judgment it is asserted that Ludlow's only damages are economic damages flowing from appellees' failure to perform the agreement. Thus, appellees conclude that, where the only loss is to the subject matter of the contract, Ludlow's claim sounds only in contract. Appellees seek to extend *DeLanney* and *Jim Walter Homes* to tort claims based on fraudulent inducement. We believe such an extension is ill-advised and we are persuaded by the analysis in *Schindler, American Nat'l Ins. Co.*, and *Matthews* that an attempt to recover benefit of the bargain damages is permitted where the plaintiff alleges a cause of action for fraudulent inducement. *See Schindler*, 829 S.W.2d at 291; *American Nat'l Ins. Co.*, 933 S.W.2d at 687; *Matthews*, 825 S.W.2d at 554. Accordingly, the trial court erred in granting summary judgment

6. *Barbouti* does contain dicta suggesting the fraud claim is properly one for breach of contract, but this was not the basis for the ultimate holding. *See Barbouti*, 866 S.W.2d at 295.

7. Although the *Hebisen* court found no evidence of fraud damages, the court remanded the cause for trial because appellants failed to lay the proper predicate for reversal and rendition. 754 S.W.2d at 348. Appellants' failure to preserve a rendition point gave appellees a second chance to prove their fraud claim; nonetheless, they are bound by this court's holding that contract-type damages are no evidence of damages in a fraudulent inducement case. *Id.* Thus, to succeed on remand, the *Hebisen* appellees would have to establish they suffered damages other than economic damages.

8. Several Texas courts of appeals have followed our decision in *Hebisen. See Parker v. Parker,* 897 S.W.2d 918, 924 (Tex.App.—Fort Worth 1995, writ denied) (finding injury from alleged fraud was loss of benefit of the bargain; therefore, the cause of action sounded solely in contract); *Leach v. Conoco, Inc.*, 892 S.W.2d 954, 960 (Tex.App.—Houston [1st Dist.] 1995, dism'd w.o.j.) (appearing to equate benefit of the bargain measure of damages with an action sounding solely in contract); *Central Sav. & Loan Ass'n v. Stemmons Northwest Bank, N. A.*, 848 S.W.2d 232, 240–241 (Tex.App.—Dallas 1992, no writ) (holding cause of action sounds solely in contract because damages alleged were "only economic injury to the subject matter of the contract").

9. In *Spoljaric*, the supreme court upheld the jury's award of punitive damages on a claim of fraudulent inducement to enter a contract despite allegation and award of actual damages giving the plaintiff the benefit of the bargain. *See Spoljaric*, 708 S.W.2d at 434–436.

on the claim of fraudulent inducement to the extent such ruling was based on application of the rule announced in *Jim Walter Homes* and *DeLanney*.

■ Another basis for granting summary judgment in favor of DeBerry was lack of a fact issue on an element of Ludlow's fraud claim. According to DeBerry, there was no proof showing DeBerry's promise was false when it was made.

Failure to perform, standing alone, is not evidence the promise was false at the time it was made. *Spoljaric,* 708 S.W.2d at 435. Although we must focus on a party's intent at the time the representation was made, intent may be inferred from the party's acts after the representation was made. *Id.* at 434. Intent is a fact question uniquely within the realm of the trier of fact because it depends upon the credibility of the witnesses and the weight to be given to their testimony. *Id.* at 434.

Ludlow reasons that, using DeBerry's argument regarding calculation of Ludlow's compensation, the representation of additional income was misleading. In support of this statement, Ludlow points to DeBerry's deposition testimony that his review of the 1988–89 Doane statements was the basis for his representation Ludlow would make an extra $50,000–100,000 per year under the oral partnership agreement. Ludlow observes that if DeBerry indeed reviewed the Doane statements as he claimed to have done, there was no basis for his representation to Ludlow that he would make an additional $50,000–100,000 per year as a partner. Additionally, Ludlow submitted with his response an affidavit of Mary Anne Capo, a manager at Arthur Andersen & Co. She also reviewed the Doane statements for the 14 month period leading up to the partnership agreement and concluded that the net profits of Falcon had to be almost 18 percent higher than they were for Ludlow to make an additional $100,-000. We agree that this proof is sufficient to raise a fact issue about the possible falsity of DeBerry's representation to Ludlow at the time it was made. We further believe the determination whether DeBerry intended to perform as allegedly represented is a question of fact for the jury. Therefore, the trial court erred to the extent it found no material issue of fact on the question whether DeBerry's representation was false when made.

■ In addition to alleging fraudulent and negligent misrepresentation, Ludlow alleged breach of fiduciary duty and the duty of good faith and fair dealing. DeBerry claimed in his motion for summary judgment that no duty of good faith and fair dealing or fiduciary duty was owed to Ludlow because there was no confidential relationship giving rise to such a duty. In his petition, Ludlow alleged the existence of a fiduciary duty arising from a confidential relationship and from the partnership relationship.

■ A fiduciary duty arises from the relationship of the parties, and not just from the contract. *Kline v. O'Quinn,* 874 S.W.2d 776, 786 (Tex.App.—Houston [14th Dist.] 1994, writ denied), *cert. denied,* 515 U.S. 1142, 115 S.Ct. 2579, 132 L.Ed.2d 829 (1995) (citing *Crim Truck & Tractor v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 594–97 (Tex.1992)). The relationship between partners gives rise to a fiduciary duty as a matter of law. *See Johnson v. Peckham,* 132 Tex. 148, 120 S.W.2d 786, 787 (1938). In addition, certain informal, confidential relationships can give rise to a fiduciary duty, "where one person trusts in and relies upon another, whether the relation is a moral, social, domestic or merely personal one." *Fitz–Gerald v. Hull,* 150 Tex. 39, 237 S.W.2d 256, 261 (1951). A fiduciary owes its principal a high duty of good faith, fair dealing, honest performance, and strict accountability. *Sassen v. Tanglegrove Townhouse Condominium Ass'n,* 877 S.W.2d 489, 492 (Tex. App.—Texarkana 1994, writ denied). The existence of a confidential relationship is usually a question of fact for the jury. *Weaver v. Stewart,* 825 S.W.2d 183, 185 (Tex.App.— Houston [14th Dist.] 1992, writ denied). When there is no evidence of a confidential relationship, however, the existence of a fiduciary duty is a question of law. *Crim Truck,* 823 S.W.2d at 594.

Ludlow claims that DeBerry's calculation of his compensation as a partner for less than Ludlow claimed was due him was a breach of fiduciary duty. As discussed previously, De-

Berry testified that, under the partnership agreement, Ludlow was to receive 25% of the annual net profits, less any payments already received by Ludlow. Ludlow claimed he should receive 25% of the profits in addition to the 60% commission payments he already was receiving. Based on this allegation, Ludlow calculated he was due an additional $159,000. DeBerry does not dispute he offered Ludlow a partnership in the company; he disputes the enforceability of any agreement and the terms of the alleged agreement. If a partnership was created, then DeBerry owed a fiduciary duty to Ludlow. Because there are fact issues existing regarding the existence of a partnership, the trial court erred in granting summary judgment on the claim of breach of a duty of good faith and fair dealing. We sustain point of error five.

### III. Discovery Disputes

 In point of error six, Ludlow claims the trial court erred in granting DeBerry's motion for protection from discovery [10] because DeBerry and SDI failed to meet their burden of showing lack of relevance or asserting a privilege entitling them to such relief. In point of error seven, Ludlow claims the trial court abused its discretion in sanctioning Ludlow with respect to this discovery request.

Under Rule 166b(5), a party from whom discovery is sought may file a motion for protection and the court may enter any order "in the interest of justice necessary to protect the movant from undue burden, unnecessary expense, harassment or annoyance, or invasion of personal, constitutional, or property rights." TEX.R. CIV. P. 166b(5). The scope of discovery lies largely within the court's discretion and we may not set aside the court's action without a clear showing of abuse of discretion. *Ginsberg v. Fifth Court of Appeals,* 686 S.W.2d 105, 108 (Tex.1985). To support reversal, the trial court's refusal to permit discovery must have been such a denial of Ludlow's rights as was reasonably calculated to cause, and probably did cause,

the rendition of an improper judgment. TEX. R.APP. P. 81(b)(1); *Bruner v. Exxon Co., U.S.A.,* 752 S.W.2d 679, 682 (Tex.App.—Dallas 1988, writ denied).

Ludlow requested production of disability claims submitted by DeBerry from January 1990 to August 1991 because he believed they were relevant to the reasons DeBerry left the company and entered the agreement with Ludlow. In response to this request, DeBerry objected on the grounds that it was outside the scope of permissible discovery, irrelevant, burdensome, and would constitute an invasion of his personal rights. The trial court granted DeBerry's motion for protection as to these documents.

Ludlow claims in his brief that DeBerry "never intended to make good on the partnership agreement" and that the "circumstances surrounding where, when, and why DeBerry decided to leave Falcon are more than relevant to the issues in this case." Ludlow further argues the production of these documents could have led to the discovery of other material evidence, "particularly where DeBerry advised Ludlow that, during the events that [led] to the institution of the present lawsuit he [DeBerry] was seeking medical treatment and intending to file a medical disability claim." Ludlow's assertions do not show that DeBerry's medical disability claims are in any way relevant to a determination of the terms of the partnership agreement, if it was breached, whether a fiduciary duty existed, and if so, whether it was breached. We find no abuse of discretion with respect to the protective order and overrule points of error six and seven.

### IV. Conclusion

We affirm the trial court's denial of the recusal motion and the trial court's grant of a protective order. As to the summary judgment rendered by the trial court, we affirm the judgment with respect to Ludlow's claim of negligent misrepresentation, and we reverse and remand Ludlow's remaining claims for trial.

---

**10.** Ludlow had requested production of disability claims submitted by DeBerry to his disability carrier.

## OPINION ON REHEARING

ANDERSON, Justice.

Appellant, Howard Ludlow, raises two points in his motion for rehearing challenging our analysis and disposition of points of error one and two concerning the ruling on Ludlow's motion to recuse the trial judge. Appellees, Scott DeBerry, Scott DeBerry Interests, Inc., and Falcon Products, Inc., have also filed a motion for rehearing. We overrule both motions for rehearing, but issue an opinion on rehearing addressing Ludlow's concerns regarding points of error one and two.

Ludlow first argues that we erred in overruling point of error one, which challenged Judge Steib's refusal to recuse the trial judge under Texas Rule of Civil Procedure 18b(2)(a). As a second ground for rehearing, Ludlow claims we erred in overruling point of error two in which Ludlow complained of Judge Steib's determination that Rule 18b(2)(a) did not state a separate ground for recusal.

A short summary of the facts pertinent to the recusal motion will aid our discussion. In moving for recusal, Ludlow primarily complained about the trial judge's comments to the jury after the jurors had rendered their verdict and been dismissed. As the jury was leaving the courtroom, the judge angrily stated that their verdict was the worst he had ever seen. Jurors were upset about this comment and contacted Ludlow's attorney. Ludlow's attorney then filed a motion to recuse the trial judge.

In response to Ludlow's complaints, DeBerry argued that recusal was inappropriate unless Ludlow established extrajudicial bias on the part of the judge. In our original opinion, we agreed with DeBerry and held that Ludlow had not shown the judge's actions emanated from an extrajudicial source.

Accordingly, we overruled points of error one and two. Ludlow now contends we erroneously decided point of error one under authority concerning Rule 18b(2)(b) rather than 18b(2)(a). Ludlow not only disputes the authority we cited, but chastises us for failing to cite other authority.[1] We have reviewed Ludlow's arguments and authority and we find our original disposition of points of error one and two was correct.

Ludlow contends we should have applied the reasonable person standard enunciated in *Rogers v. Bradley*, 909 S.W.2d 872 (Tex. 1995), which Ludlow maintains is the standard applicable to complaints under Rule 18b(2)(a). The main "opinion" in *Rogers* is a declaration of recusal by Justice Gammage, not joined by any other justice. *Id.* at 873–878 (including declaration and appendix). The standard to which Ludlow cites is found in Justice Enoch's response to the declaration of recusal. *Id.* at 878–884 (response regarding recusal). Neither the declaration nor the response is an opinion of a majority of the court and we hesitate to hold that the discussion by Justice Enoch is controlling authority.

 In some instances, Texas appellate courts have applied the reasonable person standard in determining whether a recusal motion should have been granted. *See, e.g., Keene Corp. v. Rogers*, 863 S.W.2d 168 (Tex. App.—Texarkana 1993, writ stayed); *Aguilar v. Anderson*, 855 S.W.2d 799, 804–05 (Tex.App.—El Paso 1993, writ denied) (Osborn, J. concurring opinion). A reasonable person standard makes sense because the rule provides for recusal where a judge's impartiality might *reasonably* be questioned. TEX.R. CIV. P. 18b(2)(a). However, in applying the reasonable person standard we continue to believe we must determine whether the alleged act indicating bias or impartiality emanated from an extrajudicial source.[2]

---

1. Ludlow also complains that we cite to a provision of the Code of Judicial Conduct that was not in effect at the time this lawsuit was filed. We agree with Ludlow as to this complaint and delete any reference to Canon 8A of the Code of Judicial Conduct as the wording of that canon as cited in our opinion was not effective until March 2, 1994.

2. The extrajudicial source rule is applied where recusal is sought based on a judge's in-court statements or rulings. *Liteky v. U.S.*, 510 U.S. 540, 550–552, 114 S.Ct. 1147, 1155, 127 L.Ed.2d 474, (1994). If the remarks or rulings arise from and occur during the case proceedings, they do not emanate from an extrajudicial source and are not recusable actions unless they display a deep-seated favoritism or antagonism that would

In our original opinion, we relied on *Liteky v. U.S.,* 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) and *Grider v. Boston Co., Inc.,* 773 S.W.2d 338, 346 (Tex.App.—Dallas 1989, writ denied). Both cases discuss the extrajudicial source rule and its application where recusal is sought based on in-court statements or rulings. On rehearing, Ludlow contends that *Liteky* is inapplicable because it concerns "*actual* bias occurring *within* the context of the judicial proceeding." Because *Liteky* concerned an allegation of bias or prejudice, Ludlow claims *Liteky* is no authority for a claim for recusal under Rule 18b(2)(a). Ludlow asserts that he challenged the trial judge's impartiality under Rule 18b(2)(a), regarding whether a judge's impartiality might reasonably be questioned, rather than the Rule 18b(2)(b) ground concerning bias on the part of the judge.

Ludlow misconstrues *Liteky*. The first sentence in the opinion states that the Court is determining whether the extrajudicial source rule applies to the rule in 28 U.S.C. 455(a) requiring recusal "in any proceeding in which [a judge's] impartiality might reasonably be questioned." 510 U.S. at 541, 114 S.Ct. at 1150. This federal ground for recusal is identical to Rule 18b(2)(a). Thus, we find *Liteky* applicable to this case.

■■■ As the United States Supreme Court's opinion indicates, the federal ground for recusal, regarding questions as to a judge's impartiality, is a broad ground, encompassing many more specific grounds. *Liteky,* 510 U.S. at 553–554 n. 2, 114 S.Ct. at 1156 n. 2. We believe this is true of Rule 18b(2)(a) as well. *See* William W. Kilgarlin & Jennifer Bruch, *Disqualification and Recusal of Judges,* 17 ST. MARY'S L.J. 599, 635 (1986) (stating that the grounds such as those found in Rule 18b(2)(b)-(e) are instances where a judge's impartiality might reasonably be questioned). Although Rule 18b(2)(b)-(g) address specific instances where the judge may be found to be partial or biased, Rule 18b(2)(a) provides a broad

ground, regarding reasonable questions as to the judge's impartiality. This broad ground may encompass actions other than those specifically enumerated in sections (b)-(g). Consequently, we do not construe Rule 18b(2)(a) as a discrete ground, completely separate and unrelated to 18b(2)(b) regarding bias on the part of the judge.[3]

Disagreeing with our construction of the rule, Ludlow insists that *Rogers* and *Kirby v. Chapman,* 917 S.W.2d 902 (Tex.App.—Fort Worth 1996, no writ), which cites to *Rogers,* are controlling. As we have already discussed, the portion of *Rogers* to which Ludlow cites is not an opinion by a majority of the Texas Supreme Court. Indeed, in *Rogers* only two justices articulated their views on recusal; neither the Chief Justice nor the other six justices revealed their views on the issue. Furthermore, both *Rogers* and *Kirby* concern challenges to judges' impartiality based, not on in-court statements and rulings, but on political support during the judges' candidacy for election or appointment to office. *Rogers,* 909 S.W.2d at 873–874 (challenge based on justices' appearance and statements made in video produced by Texas Medical Association political action committee); *Kirby,* 917 S.W.2d at 908 (child custody case where child's uncle, a senator, supported trial judge's appointment to bench and attorney from senator's law firm participated at trial). We find these cases factually distinguishable from the case at bar.

■■■ Ludlow cannot escape the effect of *Liteky* and *Grider* by focusing on the term "bias" and ignoring the factual basis for the courts' application of the extrajudicial source rule. In determining whether to apply the extrajudicial source rule when a litigant cites Rule 18b(2)(a), a court must consider the facts upon which recusal is sought. In this case, Ludlow sought recusal based on the trial judge's demeanor and in-court statements. The statements occurred while the case was pending before the judge. Regard-

---

make fair judgment impossible. *Id.* at 550–556, 114 S.Ct. at 1155–1157.

**3.** Case law frequently defines the "impartiality" standard as used in Rule 18b(2)(a) as avoidance of the appearance of judicial *bias. See Rogers,* 909 S.W.2d at 882 (referring to "judicial bias" in discussion of recusal under Rule 18b(2)(a)); *Aguilar,* 855 S.W.2d at 802 (after quoting language from Rule 18b(2)(a), court refers to bias necessitating recusal).

less of how a litigant phrases his motion to recuse or on which section of Rule 18b(2) he relies, the extrajudicial source rule applies to a recusal motion, such as the one in this case, that targets judicial statements regarding the case and made during the course of proceedings.[4]

Applying the extrajudicial source rule to the facts of this case, we find Ludlow did not meet the burden of proof required to show an abuse of discretion. The action complained about by Ludlow arose during the pendency of the trial court proceedings. Ludlow has not shown that these statements emanated from any source other than the judge's opinion based on his perception of the evidence presented. None of the actions by Judge Chambers indicate such a "high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky,* 510 U.S. at 555, 114 S.Ct. at 1157.

Ludlow also argues that we should have found Judge Steib's refusal to recuse the trial judge per se error. Ludlow claims that the rationale behind Rule 18(b)(2)(a) is Canon 3 of the Code of Judicial Conduct,[5] entitled "Performing the Duties of Judicial Office Impartially and Diligently." This canon sets forth the standards that apply to a judge in performing his adjudicative or administrative responsibilities. For example, Canon 3A(8) provides that a judge shall abstain from public comment about a pending case in a manner which "suggests to a reasonable person the judge's probable decision on any particular case." TEXAS SUPREME COURT, CODE OF JUDICIAL CONDUCT, Canon 3A(8) (1989) (amended 1992, 1994) [hereinafter TEX.CODE OF JUDICIAL CONDUCT, Canon 3 (1989) (amended 1992, 1994) ]. A judge must also perform his judicial duties without bias or prejudice. TEX.CODE OF JUDICIAL CONDUCT, Canon 3A(9) (1989) (amended 1992, 1994).

Ludlow contends that violation of any of the standards set out in Canon 3 is impartiality per se.[6] Ludlow compares the force and effect to be given these canons to the force and effect of rules of civil and appellate procedure; however, Ludlow cites no authority for this contention.[7] Furthermore, Ludlow cites no authority for his primary contention that a violation of a canon requires recusal and the refusal to recuse is per se error.

Several of the directives under Canon 3A use the word "shall."[8] Ludlow argues that the use of mandatory language indicates that these directives are nondiscretionary standards of conduct and that a violation mandates recusal. To be sure, there is authority for removal of a judge for violating the code,[9]

---

4. The majority in *Liteky* stated the following to exemplify the applicable standard to be applied under 28 U.S.C. § 455(a): "Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.... *Not* establishing bias or partiality, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." 510 U.S. at 555–556, 114 S.Ct. at 1157 (emphasis in original).

5. Because this case was filed before the effective date of the 1994 Code of Judicial Conduct, we refer to the prior code.

6. Ludlow urges us to find that a violation of the Code of the Judicial Conduct should result in recusal on a *per se* basis, much like violation of a statute or ordinance can result in a finding of

negligence *per se.* *See Nixon v. Mr. Property Mgmt. Co., Inc.,* 690 S.W.2d 546, 549 (Tex.1985)(discussing negligence *per se* ).

7. Ludlow cites to the BLACK'S LAW DICTIONARY definition of "canon." We, however, are unpersuaded by this authority. Other authority cited by Ludlow concern the rules of procedure and do not mention the canons regarding judicial conduct.

8. For example, Canon 3A(8) states that a "judge shall abstain from public comment about a pending or impending proceeding...." TEX.CODE OF JUDICIAL CONDUCT, Canon 3A(8) (1989) (amended 1992, 1994).

9. In 1984, the Texas Constitution was amended to provide the following:

Any Justice or Judge of the courts established by this Constitution or created by the Legislature as provided in Section 1, Article V. of this Constitution, may, subject to the other provisions hereof, be removed from office for ... willful violation of the Code of Judicial Conduct....

but we locate no authority for mandatory recusal where the challenged actions are in-court statements or rulings.

 Although a number of the directives in Canon 3 are mandatory and assist in determining when a trial judge's impartiality may reasonably be questioned, the determination whether to grant or deny a recusal motion, regardless of the ground asserted, is within the discretion of the judge assigned to hear the motion and this determination must stand unless the assigned judge abused his discretion. *See* Tex.R. Civ. P. 18a(f). As discussed by the Supreme Court in *Liteky*, a trial judge necessarily forms opinions based on the evidence presented in a case. *See Liteky*, 510 U.S. at 550–552, 114 S.Ct. at 1155. A judge's opinion, produced properly and necessarily during the course of the proceedings, does not render the trial judge recusable for bias or impartiality. *Id.* Although it is inappropriate to shout these opinions to the jurors after they have rendered their verdict, nothing in the record shows that the opinions uttered by the judge in this case arose from anything other than hearing the evidence and witnesses presented at trial. Indeed, the judge in this case denied the defendants' motion for directed verdict and allowed the jury to render a verdict. After a verdict has been rendered, however, a judge is within his power to act on his opinions by granting a motion for new trial or even to order a new trial on his own motion. Tex. R. Civ. P.320.[10]

Based on the evidence presented at the recusal hearing, Judge Steib could have determined that the outburst in front of the jury was improper, but not an action requiring recusal because he was not presented with any evidence it emanated from an extra-judicial source or revealed deep-seated and unequivocal antagonism that rendered fair judgment impossible. Finding no abuse of discretion, we adhere to our original decision to overrule points of error one and two, as clarified herein.

---

Tex. Const. art. 5, § 1–a (6). By making a willful violation of the Code of Judicial Conduct a ground for removal of a judge, the constitutional amendment elevated the importance of the Code. *See* Kilgarlin & Bruch, *supra*, at 635.

**10.** If the defendants had filed a motion for judgment notwithstanding the verdict, the judge would have been within his power to grant it and enter judgment in much the same manner as he did in this case. *See* Tex.R. Civ. P. 301. The granting of a motion for judgment notwithstanding the verdict or a motion for new trial may indicate the judge's disagreement with the jury verdict, but such non-vocal disagreement is permitted and the judge may not be recused even though a juror might find such action by the judge objectionable. *See* Tex.R. Civ. P. 301, 320. A juror's impression, under such circumstances, that the judge was impartial would not mandate recusal because the rules specifically allow the judge to express his disapproval of the verdict by granting motions for new trial or for judgment notwithstanding the verdict.