IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-03-00199-CR

 

Nathan Andrew Kniatt,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 40th District Court

Ellis County, Texas

Trial Court No. 25704CR

 



abatement order on motion for rehearing



 

The principal issue before us in Appellant Nathan
Kniatt’s motion for rehearing is whether the trial judge who heard Kniatt’s
motion to recuse District Judge Gene Knize correctly applied or interpreted the
law governing recusal.  We will abate this appeal for a new hearing on Kniatt’s
recusal motion.

Procedural Background

Kniatt was charged by indictment for possession of
methamphetamine.  At a pretrial hearing on December 7, 2001, Kniatt’s attorney
(whom Kniatt had just terminated) and the assistant district attorney informed
the trial court either that Kniatt intended to reject the State’s plea bargain
offer or that Kniatt had reneged on a plea bargain agreement, and that Kniatt wanted
to retain new counsel.  In response, Judge Knize stated:

State versus Nathan Kniatt set for trial Monday
morning.  As I understand from the attorneys they thought they had a plea
agreement.  In fact they had a plea agreement, and today the defendant has
reneged on that, doesn’t want the agreement.  I’ve also been informed he wants
to fire the lawyer.  All that’s okay with me.  I’ll take all this up. 
Defendant’s bond is revoked.  He’s going to jail pending trial.  Have a seat
over there, sir.  We’ll set your trial when we get around to it. 

 

On December 11, 2001, Kniatt returned to the trial
court and entered a guilty plea.  In accordance with the plea agreement, the
trial court deferred adjudication of guilt, placed Kniatt on community supervision
for three years, and fined Kniatt $3,000.

            The State subsequently filed a motion
to revoke Kniatt’s community supervision and to proceed with adjudication of
guilt.  Kniatt filed a pre-conviction application for writ of habeas corpus and
a motion to recuse Judge Knize from hearing that application and from hearing
the State’s motion to proceed with an adjudication of guilt.[1] 
Judge Marvin Marshall, sitting by assignment, denied the motion to recuse after
an evidentiary hearing.  Judge Knize then heard and denied Kniatt’s application
for writ of habeas corpus.  He also heard and granted the State’s motion to
revoke and adjudicated Kniatt guilty.

            Kniatt appealed the trial court’s
denial of his request for habeas corpus relief and the order denying his motion
to recuse.  We held that Kniatt met his burden of showing that his guilty plea
was involuntarily given and that the trial court erred in denying Kniatt’s habeas
corpus application, but we did not reach the recusal issue.  Kniatt v. State,
157 S.W.3d 83, 86-87 (Tex. App.—Waco 2005), rev’d, 206 S.W.3d 657 (Tex. Crim.
App.), cert. denied, 127 S.Ct. 667 (2006).  The Court of Criminal
Appeals reversed our judgment and remanded the cause for us to consider Kniatt’s
recusal issue.  Kniatt v. State, 206 S.W.3d 657, 665 (Tex. Crim. App.
2006), cert. denied, 127 S.Ct. 667 (2006).  In an unpublished opinion on
remand that we now withdraw by separate order, we held that the assigned judge
did not abuse his discretion in denying Kniatt’s motion to recuse.  Kniatt’s
motion for rehearing, which primarily alleges that we and the assigned judge
misapplied or misinterpreted recusal law, is now before us.

Standard of Review

We review a ruling denying a defendant’s motion to
recuse for abuse of discretion.  Wesbrook v. State, 29 S.W.3d 103, 120 (Tex. Crim. App. 2000); Tex. R. Civ. P. 18a(f). 
A recusal decision should not be reversed if it is within the zone of
reasonable disagreement.  Id. at 120-21.  A trial court abuses
its discretion when it acts arbitrarily and unreasonably, without reference to
guiding rules or principles, or when it misapplies the law to the established
facts of the case.  See State v. Herndon, 215 S.W.3d 901, 907-08
(Tex. Crim. App. 2007); Lyles v. State, 850 S.W.2d 497, 502 (Tex. Crim. App. 1993); Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991).

An appellate court “should reverse the trial
court’s decision only for an abuse of discretion; that is to say, only when it
appears that the trial court applied an erroneous legal standard, or when no
reasonable view of the record could support the trial court’s conclusion under
the correct law and the facts viewed in the light most favorable to its legal
conclusion.”  DuBose v. State, 915 S.W.2d 493, 497-98 (Tex. Crim. App.
1996), overruled on other grounds by Guzman v. State, 955 S.W.2d 85, 90 (Tex. Crim. App. 1997);[2] see
also In re American Homestar of Lancaster, Inc., 50 S.W.3d 480, 483
(Tex. 2001) (“A trial court has no discretion to determine what the law is or
in applying the law to the facts and, consequently, the trial court’s failure
to analyze or apply the law correctly is an abuse of discretion.”).  A trial
court has no discretion to misinterpret the law.  See Walker v. Packer,
827 S.W.2d 833, 840 (Tex. 1992); see also In re Arthur Anderson LLP, 121
S.W.3d 471, 476 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (“as to
legal issues, an error amounting to an abuse of discretion can be as simple as
misinterpreting or misapplying the law”).

Discussion

            Kniatt complains that the assigned
judge erred by denying his motion to recuse Judge Knize under Texas Rule of
Civil Procedure 18b(2)(a) or (b).  Kniatt urged recusal under the following provisions
of Rule 18b:

A judge shall recuse himself in any proceeding in
which:

 

            (a) his impartiality might reasonably
be questioned; or

            (b)
he has . . . personal knowledge of disputed evidentiary facts       concerning
the proceeding.

 

Tex. R. Civ. P. 18b(2)(a), (b).

            During the recusal hearing, the State
argued to the assigned judge that Kniatt was required to show that Judge Knize
had a bias or prejudice and, citing Cumpian v. State, that the motion
had to be based on bias arising from an extrajudicial source:[3]

            And I believe in a
motion to recuse that the burden is going to be on the defendant here to show
that the Judge had some kind of bias or prejudice[4]
against him such that he couldn’t get a fair hearing from the Judge.  

            And I have a case
that I can cite to the Court that is a court of appeals out of San Antonio, Cumpian,[5] . .
. that says specifically that a motion to recuse has to be based on bias and
prejudice by the Judge that’s related to extrajudicial matters.

            In other words, the Court’s rulings in
court can’t be the basis for motion to recuse.  Just because a defendant
doesn’t like the way that the Judge ruled against him, he can’t just make some
spurious allegations and the allegations in and of themselves require the Judge
to be recused.

 

In making its ruling from the bench, the assigned
judge stated:

In this case I have a narrow area in which I have
to operate on these motions to recuse.  And based on those parameters, I’m
going to deny the motion to recuse in this case.

 

In the State’s Brief on Remand, the State
reiterated its position that Kniatt had to show bias arising from an
extrajudicial source, and the State has not disputed Kniatt’s contention in his
motion for rehearing that the assigned judge strictly applied the per se extrajudicial-source
rule advocated by the State and found in Kemp, Rosas, and Cumpian.[6]

Kniatt’s motion for rehearing asserts that the per
se extrajudicial-source rule does not apply to questioned-impartiality and
personal-knowledge claims.  We agree in part and decline to follow Harris
to the extent that it misstates current Texas law by relying on Kemp and
Rosas.[7]  See
Harris v. State, 160 S.W.3d 621, 625 (Tex. App.—Waco 2005, pet. dism’d).[8] 
Kemp predated the Court of Criminal Appeals’ adoption of Rule 18b and thus
did not apply it,[9] and claims
of questioned impartiality and personal knowledge under Rules 18b(2)(a) and
18b(2)(b) do not always require a showing of bias or partiality arising from an
extrajudicial source.  In Kemp the court considered a motion to recuse
the trial judge because he had signed the search and arrest warrants for the
defendant.  Citing McClenan v. State, 661 S.W.2d 108, 109 (Tex. Crim.
App. 1983), overruled on other grounds by De Leon v. Aguilar, 127 S.W.3d 1, 5 (Tex. Crim. App.
2004), the defendant argued that judicial bias was a common-law basis
for disqualification.  The court responded:

A trial judge ruling on a motion alleging bias as
a ground for disqualification must decide whether the movant has provided facts
sufficient to establish that a reasonable man, knowing all the circumstances
involved, would harbor doubts as to the impartiality of the trial judge.  See
Chitimacha Tribe of Louisiana v. Harry L. Laws Co., 690 F.2d 1157, 1165
(5th Cir. 1982); see also, McClenan, supra at 109. . . . 
Moreover, it is beyond rational dispute that before alleged bias becomes
sufficient to warrant the disqualification of a judge, it “must stem from an
extrajudicial source and result in an opinion on the merits on some basis
other than what the judge learned from his participation in the case.”  United
States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16
L.Ed.2d 778 (1966).[10]

 

Kemp,
846 S.W.2d at 305-06 (emphasis added).[11]

 

            Questioned Impartiality

The gist of Kniatt’s recusal claim based on Judge
Knize’s questioned impartiality is that, based on Kniatt’s allegations of Judge
Knize’s conduct and remarks at the pretrial hearing on December 7, 2001, a
reasonable person might reasonably question Judge Knize’s impartiality in
hearing and ruling on Kniatt’s habeas application.

Rule 18b(2)(a) plainly states that a “judge shall
recuse himself in any proceeding in which . . . his impartiality might
reasonably be questioned.”[12]  Tex. R. Civ. P. 18b(2)(a).  Texas cases
almost unanimously state the following reasonable-person test for questioned
impartiality:  “In determining whether a judge’s impartiality might be
reasonably questioned so as to require recusal, the proper inquiry is whether a
reasonable member of the public at large, knowing all the facts in the public
domain concerning the judge and the case, would have a reasonable doubt that the
judge is actually impartial.”  Burkett v. State, 196 S.W.3d 892, 896 (Tex. App.—Texarkana 2006, no pet.); see also In re F.A.R., 2005 WL 181719, at *2 (Tex. App.—Eastland Jan. 13, 2005, no pet.)
(mem. op.); Mosley v. State, 141 S.W.3d 816, 834 (Tex. App.—Texarkana 2004, pet. ref’d); Sears v.
Olivarez, 28 S.W.3d 611, 615 (Tex. App.—Corpus Christi 2000, order) (citing Rogers v. Bradley, 909 S.W.2d 872,
880-81 (Tex. 1995) (Enoch, J., responding to Gammage, J.’s,
declaration of recusal)); Kirby v. Chapman, 917 S.W.2d
902, 908 (Tex. App.—Fort Worth 1996, no writ).

            The U.S. Supreme Court grappled with the extrajudicial-source
rule in Liteky v. United States, 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).  The precise issue
was whether the identical federal counterpart (28 U.S.C. § 455(a)) to Rule
18b(2)(a) was subject to the per se extrajudicial-source rule (or doctrine), as
the Eleventh Circuit had held.  Id. at 543, 114 S.Ct. at 1151 (“The
Eleventh Circuit affirmed the convictions, agreeing with the District Court
that ‘matters arising out of the course of judicial proceedings are not a
proper basis for recusal.’”  (quoting United States v. Liteky, 973 F.2d
910, 910 (11th Cir. 1992)).  The Court first described the contours of the
extrajudicial-source doctrine, which it described as being “more standard in
its formulation than clear in its application.”  Id. at 544, 114 S.Ct.
at 1152.  After examining the history of the per se extrajudicial-source
doctrine and its confinement to bias arising outside the judicial proceeding, the
Court addressed its applicability to section 455(a), but in doing so, it redefined
the “extrajudicial” (or “personal”) aspect of the doctrine[13]:

It is true that a number of Courts of Appeals have
relied upon the word “personal” in restricting § 144 to extrajudicial sources, .
. . .  And several cases have cited the absence of that word as a reason for
excluding that restriction from § 455(a), . . . .  It seems to us, however,
that that mistakes the basis for the “extrajudicial source” doctrine.

. . .

In our view, the proper (though unexpressed)
rationale for Grinnell, and the basis of the modern “extrajudicial
source” doctrine, is not the statutory term “personal”—for several reasons. 
First and foremost, that explanation is simply not the semantic success it
pretends to be.  Bias and prejudice seem to us not divided into the “personal”
kind, which is offensive, and the official kind, which is perfectly all right. 
As generally used, these are pejorative terms, describing dispositions that are
never appropriate. . . .  Secondly, interpreting the term “personal” to create
a complete dichotomy between court-acquired and extrinsically acquired bias
produces results so intolerable as to be absurd.   

. . .

            It seems to us that the origin of the
“extrajudicial source” doctrine, and the key to understanding its flexible
scope (or the so-called “exceptions” to it), is simply the pejorative
connotation of the words “bias or prejudice.”  Not all unfavorable disposition
towards an individual (or his case) is properly described by those terms.  One
would not say, for example, that world opinion is biased or prejudiced against
Adolf Hitler.  The words connote a favorable or unfavorable disposition or
opinion that is somehow wrongful or inappropriate, either because it is
undeserved, or because it rests upon knowledge that the subject ought not to
possess (for example, a criminal juror who has been biased or prejudiced by
receipt of inadmissible evidence concerning the defendant’s prior criminal
activities), or because it is excessive in degree (for example, a criminal
juror who is so inflamed by properly admitted evidence of a defendant’s prior
criminal activities that he will vote guilty regardless of the facts).  The
“extrajudicial source” doctrine is one application of this pejorativeness
requirement to the terms “bias” and “prejudice” as they are used in §§ 144 and
455(b)(1) with specific reference to the work of judges.

. . .

            It is wrong in theory, though it may
not be too far off the mark as a practical matter, to suggest, as many opinions
have, that “extrajudicial source” is the only basis for establishing
disqualifying bias or prejudice.  It is the only common basis, but not the
exclusive one, since it is not the exclusive reason a predisposition can be
wrongful or inappropriate.  A favorable or unfavorable predisposition can also
deserve to be characterized as “bias” or “prejudice” because, even though it
springs from the facts adduced or the events occurring at trial, it is so
extreme as to display clear inability to render fair judgment.   

. . .

Recusal is required whenever there exists a
genuine question concerning a judge’s impartiality, and not merely when the
question arises from an extrajudicial source.  A similar “plain-language”
argument could be made, however, with regard to §§ 144 and 455(b)(1):  They
apply whenever bias or prejudice exists, and not merely when it derives
from an extrajudicial source.  As we have described, the latter argument is
invalid because the pejorative connotation of the terms “bias” and “prejudice”
demands that they be applied only to judicial predispositions that go beyond
what is normal and acceptable.  We think there is an equivalent pejorative
connotation, with equivalent consequences, to the term “partiality.” . . .  “Partiality”
does not refer to all favoritism, but only to such as is, for some reason, wrongful
or inappropriate.

 

Id. at
548-52, 114 S.Ct. at 1154-56.

            After redefining and setting out these
new contours for the extrajudicial-source “factor,”[14]
the Court set forth rules for its application:

First, judicial rulings alone almost never
constitute a valid basis for a bias or partiality motion.  See United States v. Grinnell Corp., 384 U.S., at 583, 86 S.Ct., at 1710.  In and of themselves (i.e.,
apart from surrounding comments or accompanying opinion), they cannot possibly
show reliance upon an extrajudicial source; and can only in the rarest
circumstances evidence the degree of favoritism or antagonism required (as
discussed below) when no extrajudicial source is involved.  Almost invariably,
they are proper grounds for appeal, not for recusal.  Second, opinions
formed by the judge on the basis of facts introduced or events occurring in the
course of the current proceedings, or of prior proceedings, do not constitute a
basis for a bias or partiality motion unless they display a deep-seated
favoritism or antagonism that would make fair judgment impossible.  Thus,
judicial remarks during the course of a trial that are critical or disapproving
of, or even hostile to, counsel, the parties, or their cases, ordinarily
do not support a bias or partiality challenge.  They may do so if
they reveal an opinion that derives from an extrajudicial source; and they will
do so if they reveal such a high degree of favoritism or antagonism as to make
fair judgment impossible. . . .  Not establishing bias or
partiality, however, are expressions of impatience, dissatisfaction, annoyance,
and even anger, that are within the bounds of what imperfect men and women,
even after having been confirmed as federal judges, sometimes display.  A judge’s
ordinary efforts at courtroom administration—even a stern and short-tempered
judge’s ordinary efforts at courtroom administration—remain immune.

 

Id. at
555-56, 114 S.Ct. at 1157 (bold emphases added).

            In Dow Chemical Co. v. Francis, 46 S.W.3d 237 (Tex. 2001), the Texas Supreme Court applied the Liteky construct.[15]  Id. at 240.  It has since been consistently applied in
civil actions.  See, e.g., Trahan v. Lone Star Title Co. of El Paso, Inc., --- S.W.3d ---, ---, 2007 WL 2141902,
at *2 (Tex. App.—El Paso July 26, 2007, pet. denied); Drake v. Spriggs,
2006 WL 3627716, at *4-5 (Tex. App.—Corpus Christi Dec. 14, 2006, no pet.)
(mem. op.); Rymer v. Lewis, 206 S.W.3d 732, 736 (Tex. App.—Dallas 2006,
no pet.); Burgess v. Feghhi, 191 S.W.3d 411, 415 (Tex. App.—Tyler 2006,
no pet.); In re J.W.A., 2005 WL 2574024, at *2 (Tex. App.—Austin Oct. 13, 2005, no pet.) (mem. op.); In re M.C.M., 57 S.W.3d 27, 33-34 (Tex.
App.—Houston [1st Dist.] 2001, pet. denied); Woodruff v. Wright, 51
S.W.3d 727, 736 n.6 (Tex. App.—Texarkana 2001, pet. denied).  One court’s partially
correct restatement of Liteky makes clear that judicial remarks need not
always arise from an extrajudicial source to support a recusal motion:  “Such
remarks may constitute bias if they reveal an opinion deriving from an
extrajudicial source; however, when no extrajudicial source is alleged, such
remarks will constitute bias only if they reveal such a high degree of
favoritism or antagonism as to make fair judgment impossible.”  Barrientos
v. Nava, 94 S.W.3d 270, 292 (Tex. App.—Houston [14th Dist.] 2002, no pet.);
see Markowitz v. Markowitz, 118 S.W.3d 82, 87 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

            Most of the opinions in criminal
appeals that have cited or applied Liteky have not been published,[16]
and at least two published cases have recently followed or applied it in part. 
See Abdygapparova v. State, --- S.W.3d ---, ---, 2007 WL 3005280, at
*3-4 (Tex. App.—San Antonio Oct. 17, 2007, no pet. h.) (“the proponent must show a ‘deep-seated favoritism or antagonism
that would make fair judgment impossible’”) (quoting Liteky, 510 U.S. at 555, 114 S.Ct. at 1157); Roman v. State, 145 S.W.3d 316, 321-22 (Tex. App.—Houston [14th Dist.] 2005, pet. ref’d) (“If the alleged bias is not from an extra-judicial
source, the only proper basis for recusal based on bias is a bias indicating a
high degree of favoritism or antagonism.”) (citing Ludlow, 959
S.W.2d at 271).

Personal Knowledge of Disputed Evidentiary Facts

            The gist of Kniatt’s recusal claim under Rule
18b(2)(b) is that Judge Knize gained personal knowledge of disputed evidentiary
facts when Kniatt’s former attorney (whom Kniatt had just terminated) and the
prosecutor informed Judge
Knize in an unrecorded and ex parte side-bar conversation (which Kniatt could
not hear) at the bench either that Kniatt intended to reject the State’s plea
bargain offer or that Kniatt had reneged on a plea bargain agreement, and that
Kniatt wanted to retain new counsel.  Kniatt contends that, in receiving that
information and immediately thereafter revoking Kniatt’s bond and incarcerating
Kniatt, Judge Knize obtained personal, extrajudicial knowledge of disputed
evidentiary facts relating both as to whether and why Kniatt had reneged on a
plea bargain agreement and as to Judge Knize’s state of mind and predisposition
toward Kniatt and Kniatt’s guilty plea before Judge Knize a few days later.  See,
e.g., Edgar v. K.L., 93 F.3d 256, 258-59 (7th Cir. 1996).

Kniatt asserts that those disputed evidentiary
facts are relevant to the issue of the voluntariness of Kniatt’s guilty
plea—the subject of his habeas application—and that Judge Knize must be recused
from hearing and ruling on the habeas application.  Kniatt further argues that
testimony from Judge Knize about what he was told by the prosecutor and
Kniatt’s former attorney, about his remarks, and about the voluntariness of
Kniatt’s subsequent guilty plea would be needed at the hearing on his habeas
application, and Judge Knize obviously could not be the arbiter of his own
alleged misconduct that Kniatt alleges coerced an involuntary guilty plea.  See
Bradley v. State ex rel. White, 990 S.W.2d 245, 248 (Tex. 1999).

On Kniatt’s recusal claim under Rule 18b(2)(b), we agree with the Houston Fourteenth Court’s
analysis and application of Liteky:

The Texas cases discussing the extrajudicial
source rule concern allegations of bias or partiality, rather than allegations
of personal knowledge of disputed facts.  See, e.g., Grider, 773 S.W.2d
at 346.  Although we have not located any Texas cases applying the
extrajudicial source rule where the ground for recusal is personal knowledge of
disputed facts, other jurisdictions have done so.[ ]  Many of these cases
distinguish between knowledge that is “personal” or gained extrajudicially, and
knowledge that is gained during case proceedings.  The United States Supreme
Court disagrees with the simple categorization of bias as “personal,” which is
offensive, and official, which is not.  See Liteky, 510 U.S. at 549, 114 S.Ct. 1147. . . .

We believe this reasoning is applicable to allegations
of personal knowledge of disputed facts.  Where a party alleges the judge
possesses personal knowledge of disputed facts, the party must show that this
knowledge either was wrongfully obtained or led to a wrongful disposition of
the case.

 

Sommers v. Concepcion, 20 S.W.3d 27, 43-44 (Tex. App.—Houston [14th
Dist.] 2000, pet. denied) (footnote omitted).

            Summary

From the history of Rule 18b(2)(a) and from Liteky
and its progeny, we are persuaded that Rule 18b(2)(a) does not require a
showing of bias (partiality) arising from an extrajudicial source that is
outside the judicial proceeding.  Rather, when judicial conduct or remarks serve
as the basis for a recusal motion, the movant is required to show a “deep-seated
favoritism or antagonism that would make fair judgment impossible.” 
Liteky, 510 U.S. at 555, 114 S.Ct. at 1157; see, e.g., Rymer, 206 S.W.3d at
734-36; Scott v. State, 110 Md. App. 464, 677 A.2d 1078, 1089-90 (Md. Ct.
Spec. App. 1996) (cited in Sommers, 20 S.W.3d at 44); see also George
v. State, 20 S.W.3d 130, 138 (Tex. App.—Houston [14th Dist.]
2000, pet. ref’d) (“Here, appellant attempted to show that the trial judge had
not merely erred, but had purposefully intervened in the plea negotiations and
by deliberate intimidation, coerced an involuntary plea.  If true, these
actions would cast serious doubt on the judge’s suitability to impartially
decide his request for a new trial.”), disapproved on other grounds by
Cooper v. State, 45 S.W.3d 77 (Tex. Crim. App. 2001).

We thus disagree with current case law in criminal actions (e.g.,
Cumpian and Rosas, discussed above) that require an extrajudicial
source defined as a personal bias arising outside the judicial proceeding. 
Accordingly, based on the State’s persistent arguments to the assigned judge (and
to us) that only bias arising from an extrajudicial (outside) source could be
the basis of Kniatt’s recusal motion and on the assigned judge’s comment that
he had only a narrow area in which to rule, we hold that the assigned judge
abused his discretion by misapplying or misinterpreting applicable recusal law.

And under Rule 18b(2)(b), the movant must show that the judge’s possession
of personal knowledge of
disputed evidentiary facts either was wrongfully obtained or led to a wrongful
disposition of the case.  Sommers, 20 S.W.3d at 44; see,
e.g., Edgar v. K.L., 93 F.3d at 258-59.  An unfavorable predisposition
towards a party arising from events occurring during judicial proceedings may nonetheless
support recusal if “it is so extreme as to display a clear inability to render
fair judgment.”  Sommers, 20 S.W.3d at 44 (quoting Liteky, 510 U.S. at 552, 114 S.Ct. at 1155).

Harm

            We have determined that the assigned judge abused his discretion in denying Kniatt’s recusal
motion by misapplying or misinterpreting applicable recusal law.  We have not
determined that the assigned judge abused his discretion in denying Kniatt’s
recusal motion under a correct application of recusal law.  For this reason, it
would be premature for us to decide whether a harm analysis is required and if
so, what the test is and whether it was met.[17]  Were we to give an impermissible advisory opinion on whether the
assigned judge abused his discretion in denying Kniatt’s recusal motion under
the correct application of recusal law and whether that error harmed Kniatt, we
would be substituting ourselves into the assigned judge’s place.

Conclusion

Because the trial judge abused his discretion by
not correctly applying or interpreting recusal law, by separate order we grant
the motion for rehearing in part and withdraw the Court’s Opinion and judgment
dated June 27, 2007.  We abate this appeal and remand the cause to the trial
court for a new hearing on Kniatt’s recusal motion consistent with this
opinion.[18]

The assigned judge shall conduct the hearing
within forty-five days after the date of assignment.  The trial court clerk and
court reporter shall file supplemental records within thirty days after the
date of the recusal hearing.  If the assigned judge denies Kniatt’s recusal
motion, Kniatt’s supplemental brief
will be due twenty days after the
supplemental records are filed.  The State’s supplemental brief will be
due twenty days after Kniatt’s supplemental brief is due or is filed, whichever
occurs earliest.

 

            PER CURIAM

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

(Chief Justice Gray dissenting)

Appeal
abated 

Order
issued and filed December 5, 2007

Publish










[1]  On this remand to us, Kniatt has abandoned his motion
to recuse Judge Knize from hearing and ruling on the State’s motion to revoke
and to adjudicate.  The recusal motion is thus only directed at Judge Knize’s
hearing and ruling on Kniatt’s habeas application.





[2]  As Judge Holcomb has stated, “As to the
determination of controlling legal principles, an abuse of discretion occurs if
the trial court clearly fails to analyze or apply the law correctly.  A trial
court has no discretion in determining what the law is or applying the law to
the facts.  Thus, a failure by a trial court to analyze or apply the law
correctly will constitute an abuse of discretion.”  State v. Kurtz, 152 S.W.3d 72, 81 (Tex. Crim. App. 2004) (Holcomb, J., dissenting)
(citing (State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999)).





[3]  An extrajudicial source has typically been
considered “a source outside the proceeding at hand.”  Liteky v. United
States, 510 U.S. 540, 545, 114 S.Ct. 1147, 1152, 127 L.Ed.2d 474 (1994); see
also Roman v. State, 145 S.W.3d 316, 321 (Tex. App.—Houston [14th Dist.]
2004, pet. ref’d) (“The plain language meaning of extrajudicial then,
suggests that a statement made within a judicial proceeding, and repeated in a
judicial proceeding, cannot be from an extrajudicial source.”).  As we show
below, in Liteky, the Supreme Court articulated a broader meaning of
extrajudicial source.  See Liteky, 510 U.S. at 548-55, 114 S.Ct.
at 1152-57.

 





[4]  The first part of Rule 18b(2)(b) provides that a
judge shall recuse himself if “he has a personal bias or prejudice concerning
the subject matter or a party.”  Tex. R.
Civ. P. 18b(2)(b).  Contrary to the State’s arguments at the recusal
hearing, Kniatt did not have to show “some kind of bias or prejudice” because
he did not move for recusal under the first part of Rule 18b(2)(b) and because,
as we hold below, bias arising only from an extrajudicial source need
not be shown under Rule 18b(2)(a) or the second part of Rule 18b(2)(b), the two
provisions on which Kniatt sought recusal.

 





[5]  Cumpian v. State, 812
S.W.2d 88, 91 (Tex. App.—San Antonio 1991, no pet.) (“’To require recusal, a
judge’s bias must be extrajudicial and not based upon in-court rulings.’”)
(quoting Grider v. Boston Co. Inc., 773 S.W.2d 338, 346 (Tex.
App.—Dallas 1989, writ denied), and citing United States v. Grinnell Corp.,
384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966)).

 





[6]  Based on the argument that the State was making,
we believe that, in saying, “I have a narrow area in which I have to operate on
these motions to recuse,” the assigned judge was referring to the
extrajudicial-source rule.

 





[7]  Kemp v. State, 846 S.W.2d 289 (Tex. Crim.
App. 1992).

 





[8]  In Harris, we relied on Kemp and Rosas
(which also relied on Kemp) to state that bias must be shown under Rule
18b(2)(a).  See Harris, 160 S.W.3d at 625 (citing Kemp, 846
S.W.2d at 306, and Rosas v. State, 76 S.W.3d 771, 774 (Tex. App.—Houston [1st Dist.] 2002, no pet.)).  But as Kniatt shows in his motion for rehearing, Kemp
is not authoritative for the proposition that questioned impartiality under
Rule 18b(2)(a) always requires a showing of bias arising from an extrajudicial
source.

 





[9]  In 1993, the Court of Criminal Appeals held that
the rules of civil procedure governing disqualification and recusal of judges
(Rules 18a and 18b) apply in criminal cases.  Arnold v. State, 853
S.W.2d 543, 544 (Tex. Crim. App. 1993); see, e.g., Burkett v. State, 196
S.W.3d 892, 896 (Tex. App.—Texarkana 2006, no pet.).  Since the adoption of
Rule 18b, it appears that the Court of Criminal Appeals has not considered
whether bias arising from an extrajudicial source is necessary for a questioned
impartiality claim.  Therefore, we will consider Rule 18b’s history and the
application of the extrajudicial-source rule in civil cases and in criminal
actions in other intermediate appellate courts.

 





[10]  In Grinnell, the Supreme
Court considered a statutory claim for recusal under a federal statute
providing:  “Whenever a party to any proceeding in a district court makes and
files a timely and sufficient affidavit that the judge before whom the matter
is pending has a personal bias or prejudice either against him or in favor of
any adverse party, such judge shall proceed no further therein, but another
judge shall be assigned to hear such proceeding.”  United States v. Grinnell
Corp., 384 U.S. 563, 582 n.12, 86 S.Ct. 1698, 1710 n.12, 16 L.Ed.2d 778 (1966)
(citing 28 U.S.C. § 144 (1964)).  The Supreme Court held:  “The alleged bias
and prejudice to be disqualifying must stem from an extrajudicial source and
result in an opinion on the merits on some basis other than what the judge
learned from his participation in the case.”  Id. at 583, 86 S.Ct. at
1710.  In Liteky the Supreme Court rejected what has been called the per
se extrajudicial-source rule espoused in Grinnell.  See Liteky,
510 U.S. at 554-55, 114 S.Ct. at 1157; id. at 557-58, 114 S.Ct. at 1158-59
(Kennedy, J., concurring) (“I agree with the Court insofar as it recognizes
that there is no per se rule requiring that the alleged partiality arise
from an extrajudicial source. . . .  I agree, then, with the Court’s rejection
of the per se rule applied by the Court of Appeals, which provides that
‘matters arising out of the course of judicial proceedings are not a proper
basis for recusal’ under § 455(a).”).

 





[11]  In Rosas, the court,
relying on Kemp, said that “the bias must have come from an extrajudicial
source and result in an opinion on the merits of the case other than what the
judge learned from participating in the case.”  Rosas v. State, 76
S.W.3d 771, 774 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing Kemp,
846 S.W.2d at 306).

 





[12]  Rule 18b was adopted in 1980
virtually verbatim from Canon 3(c) of the Texas Code of Judicial Conduct.  See
In re K.E.M., 89 S.W.3d 814, 827 n.15 (Tex. App.—Corpus Christi 2002, no
pet.); see also Rogers v. Bradley, 909 S.W.2d 872, 880 (Tex. 1995) (Enoch,
J., responding to Gammage, J.’s, declaration of recusal); State
ex rel. Milsap v. Lozano, 692 S.W.2d 470, 478 (Tex. Crim. App. 1985). 
Likewise, 28 U.S.C. § 455, the federal counterpart to Rule 18b(2)(a), was
derived from the ABA’s 1972 Model Code of Judicial Conduct and enacted in
1974.  See Rogers, 909 S.W.2d at 880 (Enoch, J., responding to Gammage,
J.’s, declaration of recusal); H.R.
Rep. No. 93-1453 (1974), as reprinted in 1974 U.S.C.C.A.N. 6351,
6353.  Section 455, the statute at issue
in Liteky, provides in pertinent part:

(a) Any justice, judge, or
magistrate judge of the United States shall disqualify himself in any
proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify
himself in the following circumstances:

(1) Where he has a personal bias
or prejudice concerning a party, or personal knowledge of disputed evidentiary
facts concerning the proceeding;

28 U.S.C. § 455(a), (b)(1).  Section 455(a) was intended not only to
broaden the grounds for recusal, but to establish recusal grounds distinct from
those based on “personal bias or prejudice” found in Section 455(b)(1).  See
H.R. Rep. No. 93-1453, as
reprinted in 1974 U.S.C.C.A.N. at 6355 (“Subsection (b) of the amended statute
sets forth specific situations or circumstances when the judge must disqualify
himself. These specific situations in subsection (b) are in addition to
the general standard set forth in subsection (a).”) (emphasis added).





[13]  See Liteky, 510 U.S. at 554, 114 S.Ct. at 1157 (“For all these reasons, we think that the “extrajudicial
source” doctrine, as we have described it, applies to § 455(a).”)
(emphasis added).  Kniatt correctly notes that some Texas cases have either
glossed over or missed Liteky’s redefinition of “extrajudicial.”  See,
e.g., Barrientos v. Nava, 94 S.W.3d 270, 291-92 (Tex. App.—Houston [14th Dist.]
2002, no pet.); Ludlow v. Deberry, 959 S.W.2d 265, 271 (Tex.
App.—Houston [14th Dist.] 1997, no pet.); cf. Sommers v. Concepcion, 20 S.W.3d 27, 43-44 (Tex. App.—Houston [14th Dist.] 2000, pet. denied)
(quoting and discussing Liteky at length).  We thus quote Liteky
at length to emphasize its rejection of the per se rule and its adoption of a
meaning of “extrajudicial” other than outside the judicial proceeding at hand.





[14]  In further elucidation on the contours of the
extrajudicial-source “doctrine,” the Court narrowed it to “factor” status:

As we have described it, however, there is not
much doctrine to the doctrine.  The fact that an opinion held by a judge
derives from a source outside judicial proceedings is not a necessary
condition for “bias or prejudice” recusal, since predispositions developed
during the course of a trial will sometimes (albeit rarely) suffice.  Nor is it
a sufficient condition for “bias or prejudice” recusal, since some
opinions acquired outside the context of judicial proceedings (for example, the
judge’s view of the law acquired in scholarly reading) will not
suffice.  Since neither the presence of an extrajudicial source necessarily
establishes bias, nor the absence of an extrajudicial source necessarily
precludes bias, it would be better to speak of the existence of a significant
(and often determinative) “extrajudicial source” factor, than of an “extrajudicial
source” doctrine, in recusal jurisprudence.

Id. at 554-55, 114
S.Ct. at 1157.





[15]  Before the Francis decision, several
cases applied all or part of Liteky, with the first and most-cited being
Ludlow v. Deberry, 959 S.W.2d at 271.  See also Sommers,
20 S.W.3d at 41-44; Chandler v. Chandler, 991 S.W.2d 367, 385-86
(Tex. App.—El Paso 1999, pet. denied).

 





[16]  See, e.g., Kimball v. State, 2007 WL
1501129, at *1 (Tex. App.—Beaumont May 23, 2007, no pet.) (mem. op.) (not
designated for publication); Tatro v. State, 2003 WL 1891656, at *10-11
(Tex. App.—Houston [1st Dist.] April 17, 2003, pet. ref’d) (not designated for
publication); Grimes v. State, 2001 WL 633767, at *1 (Tex. App.—El Paso June 7, 2001, no pet.) (not designated for publication); Easton v. State,
2001 WL 1289945, at *4-5 (Tex. App.—Houston [14th Dist.] Oct. 25, 2001, pet.
ref’d) (not designated for publication).

 





[17]  Based on the following
discussion from the San Antonio Court of Appeals on a defendant’s complaint
that the trial judge was not impartial by engaging in ex parte communications
with the prosecutor, it would appear that court would hold that the erroneous denial
of a motion to recuse defies a harm analysis:

No matter what
evidence is against a defendant, the United States Constitution guarantees the
defendant the right to an impartial judge.  See Blue v. State, 41 S.W.3d
129, 138 (Tex. Crim. App. 2000) (Mansfield, J., concurring).  The United States
Supreme Court has repeatedly held that a violation of the right to an impartial
judge is a structural error that defies harm analysis.  Arizona v. Fulminante,
499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); Chapman v.
California, 386 U.S. 18, 23 & n.8, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967);
Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); see
also Cain v. State, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997)
(acknowledging structural errors recognized by Arizona).  The “presence
on the bench of a judge who is not impartial” deprives a defendant of his basic
protections and infects the entire trial process from beginning to end.  Arizona, 499 U.S. at 309-10; see also Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999).  The constitutional deprivation of an
impartial judge affects the “framework within which the trial proceeds” and
prevents the criminal trial from “reliably serv[ing] its function as a vehicle
for determination of guilt or innocence.”  Arizona, 499 U.S. at 310.

. . .

This is clearly a
case in which the absence of an impartial trial judge on the bench infected the
entire trial process, robbing Abdygapparova of her basic protections and
undermining the ability of the criminal trial to reliably serve its function as
a vehicle for the determination of guilt or innocence.  See Neder, 527 U.S. at 8; Arizona , 499 U.S. at 310.  Because “the right violated [in this case] was
the right to an impartial judge, which is structural error, a harm analysis is
not warranted.”  Blue, 43 S.W.3d at 139 (Mansfield, J., concurring).

“No matter what the
evidence was against [her], [Abdygapparova] had a right to an impartial
judge.”  Id. at 138.  Because the absence of an impartial judge on the
bench infected the integrity of the trial process, the trial court's judgment
is reversed, and the cause is remanded for a new trial.

Abdygapparova v. State, 2007 WL 3005280, at
*13-14 (Tex. App.—San Antonio Oct. 17, 2007, no pet. h.); see also Miles v.
State, 204 S.W.3d 822, 826 (Tex. Crim. App. 2006) (“The harmless-error rule
may not be applied to “structural defect[s]. . . .  Examples of such “structural
defects” include . . . “partiality by the judge presiding over the trial, . . .
“); cf. In re Union Pac. Resources Co., 969 S.W.2d 427, 428 (Tex.
1998) (“If the appellate court determines that the judge presiding over the
recusal hearing abused his or her discretion in denying the motion and the
trial judge should have been recused, the appellate court can reverse the trial
court’s judgment and remand for a new trial before a different judge.  This
procedure is no different than the correction of any trial court error through
the normal appellate process.”); De Leon v. Aguilar, 127 S.W.3d 1, 6-7
(Tex. Crim. App. 2004) (“Moreover, McClenan . . . demonstrates that a
trial judge’s failure to comply with Rule 18a can be harmless where the record
demonstrates that the trial judge was not biased.  See McClenan, 661
S.W.2d at 111. . . .  This rule, however, does not apply here because
respondent’s bias has been established as a matter of law.  Any trial resulting
in an appeal would be a waste of judicial resources because this is a structural
error not subject to a harm analysis.  See Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35 (1999) (biased trial judge is
structural error not subject to harm analysis).”).  But see Mosley v.
State, 141 S.W.3d 816, 837-39 (Tex. App.—Texarkana 2004, pet. ref’d)
(ruling, albeit in apparent dicta, that three-part harm analysis applied if
assigned judge erred in denying recusal motion).

 





[18]  See Ludlow, 959 S.W.2d at 269 (appellate
court abated appeal for another recusal hearing); Ross
v. State, 947 S.W.2d 672, 673 (Tex. App.—Texarkana
1997, no pet.) (abating appeal for recusal hearing); Sanchez v.
State, 926 S.W.2d 391, 396 (Tex. App.—El Paso 1996, pet. ref’d) (same); Martin
v. State, 876 S.W.2d 396, 398 (Tex. App.—Fort Worth 1994, no pet.) (same);
see also In re K.K., 180 S.W.3d 681, 687 & n.5 (Tex. App.—Waco 2005,
order) (discussing numerous abatement-remand contexts in civil and criminals
appeals); Mendoza v. State, 935 S.W.2d 501, 503-04 (Tex. App.—Waco 1996,
order).